Filed 8/20/19 Certified for Publication 9/13/19 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

----

| | |
|---|---|
| CALAVERAS TELEPHONE COMPANY et al., | C085725 |
| Petitioners, | (Resolution T-17559 & Decision No. 17-09-16) |
| v. | |
| PUBLIC UTILITIES COMMISSION, | |
| Respondent. | |

Ten small telephone companies seek review of a California Public Utilities Commission (Commission) resolution and decision declining to issue certain funding to Siskiyou Telephone Company (Siskiyou) and Volcano Telephone Company (Volcano). The telephone companies claim the resolution and decision departed from well-established requirements governing the issuance of funding from the California High Cost Fund A (CHCF-A), a universal service program that helps Californians in remote

1

areas receive access to telecommunication services at reasonable rates. The telephone companies argue the Commission's resolution and decision presents a current threat to all of them, because they are likely to be similarly harmed by the Commission's failure to comply with its legal requirements. They assert the Commission failed to comply with applicable rules, relied on an arbitrary theory lacking evidentiary support, reached conclusions not supported by its findings, effectuated an unconstitutional taking of property without just compensation, and violated due process and statutory rights.

Although we reject the telephone companies' assertion that the adjustments were mandatory, we agree with them that the Commission's resolution and decision did not conform to applicable rules. Accordingly, we will annul the portions of the resolution and decision denying Siskiyou and Volcano's adjustment requests for 2016 nonrecurring revenue impacts and remand the matter for further proceedings. Under the circumstances, we need not address the other contentions asserted by the telephone companies. We deny the telephone companies' post-oral argument request for judicial notice on the ground that the referenced material is not relevant.

BACKGROUND AND APPLICABLE LAW

The Commission supervises and regulates every public utility in California. (Pub. Util. Code, § 701;[1] *Southern California Edison Co. v. Public Utilities Com.* (2006) 140 Cal.App.4th 1085, 1091 (*Southern Cal. Edison*).) It has broad regulatory powers, including the power to fix rates and to establish rules and procedures. (Cal. Const., art. XII, §§ 2, 6; § 728; *Wise v. Pacific Gas & Electric Co*. (1999) 77 Cal.App.4th 287, 293.) A telephone corporation delivering a service to the public for which it receives compensation is a public utility and is subject to regulation and control by the Commission. (Cal. Const., art. XII, § 3; § 216, subds. (a), (b).)

---

[1] Undesignated statutory references are to the Public Utilities Code.

Siskiyou and Volcano are small independent telephone corporations that offer basic local telephone service to customers in rural and remote areas in California. (*In the Matter of Application of the Siskiyou Tel. Co. (U1017c) to Review Intrastate Rates & Charges, Establish A New Intrastate Revenue Requirement & Rate Design, & Modify Selected Rates* (2016) Cal. P.U.C. Dec. No. 16-09-047 (*In the Matter of Siskiyou*); *In the Matter of Application of Volcano Tel. Co. (U1019c) to Review Intrastate Rates & Charges, Establish A New Intrastate Revenue Requirement & Rate Design, & Modify Selected Rates* (2016) Cal P.U.C. Dec. No. 16-09-049 (*In the Matter of Volcano*).) Small independent telephone corporations are rural incumbent local exchange carriers subject to Commission regulation. (§ 275.6, subd. (b)(6).) A local exchange carrier is a telephone company that provides local telephone service. (Barry D. Fraser, *Telecommunications Competition Arrives: Is Universal Service Out of Order?* (1995) 15 Cal.Reg.L.Rep. 1, 7, fn. 19.) The telephone companies are also sometimes referenced as small incumbent local exchange carriers or small ILECs. Because small ILECs are carriers of last resort, they qualify for CHCF-A subsidies. (§ 275.6, subds. (a), (d).) A carrier of last resort is a telephone corporation that is required to fulfill all reasonable requests for service within its service territory. (§ 275.6, subd. (b)(1).)

California's universal service goal is to provide affordable basic telephone service to at least 95% of all households in the state. (*Rulemaking on the Commission's Own Motion to Comply with the Mandates of Senate Bill 1712* (2002) Cal P.U.C. Dec. No. 02-10-060, Appendix A, Chapter 2.) CHCF-A is one of the state's universal service programs. (*Ibid.*) CHCF-A provides subsidies to keep rates for rural telephone customers low. (Stats. 1999, ch. 677, § 2 [former §§ 270, subd. (a), 275]; Stats. 2008, ch. 342, § 1; Off. of Assem. Floor Analyses, 3d reading analysis of Sen. Bill No. 669 (1999-2000 Reg. Sess.), as amended September 7, 1999.) The subsidies come from surcharges authorized by the Commission. (§ 275, subd. (b).)

The areas rural telephone companies serve are characterized by high costs and less dense populations. (*Order Instituting Rulemaking into the Review of the California High Cost Fund-A Program* (2014) Cal P.U.C. Dec. No. 14-12-084.) Ensuring that rural telephone customers have reliable communications services furthers the universal service goals of state and federal statutes and enhances public safety in rural areas. (*Ibid.*) Accordingly, the Legislature declared that maintaining adequate funding for CHCF-A is essential to public health and safety. (§ 275, subd. (d).) The Commission maintains the CHCF-A program "to provide universal service rate support to small independent telephone corporations in amounts sufficient to meet the revenue requirements established by the [C]ommission through rate-of-return regulation in furtherance of the state's universal service commitment to the continued affordability and widespread availability of safe, reliable, high-quality communications services in rural areas of the state." (§ 275.6, subd. (a).) Rate-of-return regulation means a regulatory structure whereby the Commission establishes a telephone corporation's revenue requirements, and then fashions a rate design to provide the company a fair opportunity to meet the revenue requirement. (§ 275.6, subd. (b)(4).) Revenue requirement is the amount a telephone corporation needs to recover its "reasonable expenses and tax liabilities and earn a reasonable rate of return on its rate base," i.e., investments. (§ 275.6, subds. (b)(2) [rate base is "the value of a telephone corporation's plant and equipment that is reasonably necessary to provide regulated voice services and access to advanced services, and upon which the telephone corporation is entitled to a fair opportunity to earn a reasonable rate of return"], (b)(5).) Rate design is "the mix of end user rates, high-cost support, and other revenue sources" that provides a telephone corporation a fair opportunity to meet its revenue requirement. (§ 275.6, subd. (b)(3).)

The implementing rules for CHCF-A are found in the appendix to the Commission's Decision 91-09-042. (*In the Matter of the Alternative Regulatory Frameworks for Local Exchange Carriers* (1991) 41 Cal.P.U.C.2d 326, 327.) Under

those rules, small ILECs must periodically file general rate case applications with the Commission in order to receive CHCF-A support. (*Order Instituting Rulemaking into the Review of California High Cost Fund-A Program* (2015) Cal P.U.C. Dec. No. 15-06-048.) "The basic approach of the [C]ommission in rate making . . . is to take a test year and determine the revenues, expenses, and investment for the test year. . . . [T]he test period results are adjusted to allow for reasonably anticipated changes in revenues, expenses, or other conditions 'so that the test-period results of operations as determined by the [C]ommission will be as nearly representative of future conditions as possible.' " (*Los Angeles v. Public Utilities Com.* (1972) 7 Cal.3d 331, 346-347.) A general rate case application is filed two years before the test year. (Dec. No. 15-06-048 at Appendix A, Table 1.) For example, a general rate case with the test year 2017 is filed at the end of 2015 and adjudicated in 2016. (*Id.* at Appendix A, Table 2.) The Commission examines a company's costs and determines its revenue requirement and rate design for the test year. (§ 275.6, subd. (b)(4); *The Ponderosa Telephone Co. v. Public Utilities Com.* (2011) 197 Cal.App.4th 48, 51.) Subsidies from CHCF-A are one source of funds to help a small ILEC meet its revenue requirement and are part of the rate design of a small ILEC. (§ 275.6, subds. (b)(3), (c)(4).)

CHCF-A subsidies are subject to a six-year phase down cycle, with reduced funding levels after the third year following the completion of the previous general rate case. (*Order Instituting Rulemaking into the Review of California High Cost Fund-A Program, supra*, Cal P.U.C. Dec. No. 15-06-048.) In the first three years after the completion of a general rate case, a company receives full (100%) CHCF-A funding. (*Ibid.*) A company must submit a general rate case application by the end of the third year following the last test year to recover CHCF-A funding at the 100% level. (*Ibid.*) In years following the decision in the general rate proceeding, a company files annual advice letters reflecting certain net incremental changes and corresponding adjustments in

5

its rate design and CHCF-A funding amounts. (*In the Matter of the Alternative Regulatory Frameworks for Local Exchange Carriers, supra,* 41 Cal.P.U.C.2d at p. 332.)

Siskiyou and Volcano filed general rate case applications with the Commission on December 1, 2015, to update their intrastate rates and charges and revenue requirement, establish their rate designs, and increase their CHCF-A draws for test year 2017. (*In the Matter of Siskiyou, supra,* Cal. P.U.C. Dec. No. 16-09-047; *In the Matter of Volcano, supra,* Cal. P.U.C. Dec. No. 16-09-049.)

Siskiyou and Volcano, on the one hand, and the Commission's Office of Ratepayer Advocates, on the other, settled the general rate case applications in June 2016. (*In the Matter of Siskiyou, supra,* Cal. P.U.C. Dec. No. 16-09-047; *In the Matter of Volcano, supra*, Cal. P.U.C. Dec. No. 16-09-049) The Commission approved the settlements in decisions issued on September 29, 2016. (*Ibid.*) CHCF-A subsidies were a significant source of support that Siskiyou and Volcano would receive to fulfill their revenue requirement for 2017.

After the parties filed their motions to approve their settlement agreements but before the Commission granted those motions, Siskiyou and Volcano submitted advice letter Nos. 405 and 390, respectively, to the Commission to request adjustments to their CHCF-A funding for 2016. (*In the Matter of Siskiyou, supra*, Cal. P.U.C. Dec. No. 16-09-047; *In the Matter of Volcano, supra*, Cal. P.U.C. Dec. No. 16-09-049.) The requested adjustments purportedly relate to lost revenues in 2016 because of regulatory changes identified in Federal Communications Commission (FCC) Orders 14-190 and 16-33. Siskiyou sought adjustments of $197,976 for non-recurring 2016 lost revenue impacts. Volcano sought adjustments of $55,495.04 for the same.

In April 2017, the Commission adopted draft Resolution T-17559, addressing CHCF-A funding for test year 2017 and the adjustments requested by Siskiyou and Volcano for 2016 lost revenues. The draft resolution disallowed Siskiyou and Volcano's requests for additional CHCF-A payments for 2016 lost revenues, concluding that the

adjustment requests should have been included in Siskiyou and Volcano's general rate cases for test year 2017 instead of in advice letters.

Ten small ILECs -- Calaveras Telephone Company, Cal-Ore Telephone Company, Ducor Telephone Company, Foresthill Telephone Company, Kerman Telephone Company, Pinnacles Telephone Company, The Ponderosa Telephone Company, Sierra Telephone Company, Inc., Siskiyou and Volcano -- submitted opening comments on draft Resolution T-17559, challenging the denial of the requested adjustments. (Cal. Code Regs., tit. 20, § 14.5 [any person may comment on a draft resolution].) The Commission adopted its draft resolution with minor changes and replies to comments received. The Commission said the 2016 adjustments were disallowed because the general rate cases for Siskiyou and Volcano for test year 2017 were closed and there was no methodology to assure that Siskiyou and Volcano were earning no more than their authorized rate of return.

The telephone companies filed an application for rehearing of Resolution T-17559. (Cal. Code Regs., tit. 20, § 16.2, subd. (b) [any person who served written comments on a draft resolution is a party for purposes of filing an application for rehearing of a resolution].) They argued, among other things, that the CHCF-A implementing rules allowed the filing of advice letters to request adjustments in CHCF-A subsidies due to reductions in federal funding, and Resolution T-17559 did not comport with the implementing rules. They said the adjustments requested were for 2016 and, thus, were not covered by Siskiyou and Volcano's general rate cases.

The Commission modified Resolution T-17559 and denied rehearing as to Siskiyou and Volcano in Decision 17-09-016. The decision removed the statement in Resolution T-17559 that there was no methodology to assure that Siskiyou and Volcano were earning no more than their authorized rate of return. But the Commission maintained that the adjustment requests should have been submitted as part of Siskiyou and Volcano's general rate cases. It said the adjustments were also disallowed because

7

Siskiyou and Volcano did not establish that the adjustments would not cause them to exceed their authorized rates of return.

The telephone companies timely filed a petition for writ of review in this Court, challenging Resolution T-17559 and Decision 17-09-016. (§ 1756, subd. (a).) We issued a writ of review and directed the Commission to certify its record. In this opinion we do not discuss the portions of Resolution T-17559 and Decision 17-09-016 relating to Kerman Telephone Company, because the petition for writ of review is limited to the resolution and decision on the Siskiyou and Volcano advice letters 405 and 390.

JURISDICTION AND STANDARD OF REVIEW

A party aggrieved by a decision of the Commission may petition for a writ of review in the court of appeal. (§§ 1756, subd. (a), 1759, subds. (a), (b) [providing for writ of mandate to the Commission]; *Southern Cal. Edison, supra,* 140 Cal.App.4th at 1095.) The parties agree that section 1757 governs our review of the challenged decisions. Section 1757, subdivision (a) provides in pertinent part: "[I]n a ratemaking . . . decision of specific application that is addressed to particular parties, the review by the court shall not extend further than to determine, on the basis of the entire record which shall be certified by the Commission, whether any of the following occurred: [¶] . . . [¶] (2) The commission has not proceeded in the manner required by law. [¶] (3) The decision of the commission is not supported by the findings. [¶] (4) The findings in the decision of the commission are not supported by substantial evidence in light of the whole record. [¶] (5) The order or decision of the commission was . . . an abuse of discretion. [¶] (6) The order or decision of the commission violates any right of the petitioner under the Constitution of the United States or the California Constitution."

There is a strong presumption favoring the validity of the Commission's decision. (*Toward Utility Rate Normalization v. Public Utilities Com.* (1978) 22 Cal.3d 529, 537.) Nevertheless, a court of appeal will annul a decision by the Commission if the Commission failed to comply with its own rules and the failure was prejudicial.

8

(*Southern Cal. Edison, supra*, 140 Cal.App.4th at p. 1106; *Southern California Edison Co. v. Public Utilities Com.* (2000) 85 Cal.App.4th 1086, 1105-1106.)

DISCUSSION

A

The telephone companies begin by arguing that the Commission failed to follow the CHCF-A implementing rules when it disallowed the advice letter adjustment requests and required that such requests be addressed in the general rate cases for test year 2017. We agree with the telephone companies.

The CHCF-A implementing rules state that each year a company shall file with the Commission an advice letter incorporating the net settlements effects upon such company of regulatory changes ordered by the Commission and the FCC.  (*In the Matter of the Alternative Regulatory Frameworks for Local Exchange Carriers, supra,* 41 Cal.P.U.C.2d at pp. 330-331.)  The implementing rules say advice letter filings will include regulatory changes of industry-wide effect.  (*Ibid.*)  "Each company shall file an advice letter by October 1 of each year (commencing October 1, 1988) setting forth the net increase or decrease from these factors upon that portion of its revenue requirement which must be met from its local exchange rate design. . . ."  (*Ibid.*)

The Commission acknowledges that the implementing rules require small ILECs to report regulatory changes of industry-wide effect in annual advice letters, and it also acknowledges that the type of adjustments sought by Siskiyou and Volcano appear to be regulatory changes of the nature contemplated by the Commission's rules.  But the Commission says its practice is to defer or deny adjustment requests based on the temporal proximity to a carrier's last or upcoming general rate case, and the challenged decisions are consistent with that practice.

The Commission does not cite authority for its practice.  It does not explain how its practice squares with the implementing rules, which provide for the annual filing of an advice letter reflecting regulatory changes of industry-wide effect and corresponding

9

adjustments in a company's local exchange rate of design and CHCF-A funding amounts. (*In the Matter of the Alternative Regulatory Frameworks for Local Exchange Carriers, supra,* 41 Cal.P.U.C.2d at pp. 330-331.)  The rules do not say a company may not submit an advice letter to request an adjustment for regulatory changes of industry-wide effect when the company has recently completed a general rate case.  Where the Commission provides no authoritative basis for its approach, we "have nothing to which we can meaningfully defer." (*Southern California Edison Co. v. Public Utilities Com., supra,* 85 Cal.App.4th at p. 1106.)

Nevertheless, the Commission references resolutions in two other cases to establish that it has such a practice.  In the first example, Resolution T-17181, the Commission deferred requests for 2009 support until it decided general rate cases for test year 2009.  (Cal.P.U.C., Resolution T-17181 (Feb. 3, 2009) <http://www.cpuc.ca.gov> (Resolution T-17181).)  But unlike in the present case, the Commission did not deny the requests for CHCF-A support altogether.  Likewise, the second example, Resolution T-17273, does not support the Commission's position.  In that resolution the Commission denied Siskiyou's adjustment request for recurring 2010 lost revenues, concluding Siskiyou should have made the request in its test year 2011 general rate case.  (*Addresses Adjustment Requests from Eight Small Local Exch. Carriers Requesting Modifications to Their Draws from the California High Cost Fund-A Admin. Comm. Fund for Calendar Year 2010* (Jan. 27, 2011) Cal. P.U.C. Resolution T-17273 (Resolution T-17273).)  But in the same resolution, the Commission allowed Siskiyou's adjustment request for 2009 non-recurring lost revenues.[2]  (*Ibid.*)  Even though Siskiyou would have filed its general

---

[2]  The adjustments requested in this case are for non-recurring lost revenues.  The writ petition explains that revenue impacts are non-recurring when they affect revenue for past periods, and revenue impacts are recurring when they concern revenue for the upcoming year.  The answer does not challenge this explanation.

rate case for test year 2011 in 2009, the Commission did not require Siskiyou to make the adjustment request for 2009 in its general rate case. (*Ibid.*)

The telephone companies cite resolutions in which the Commission approved adjustments for non-recurring impacts when companies had recently completed general rate cases. (Resolution T-17273; *Fourteen Small Local Exch. Carriers & the California High Cost Fund-A Admin. Comm. Fund* (Jan. 21, 2010) Cal. P.U.C. Resolution T-17247; Resolution T-17181.) Those resolutions are inconsistent with the Commission's purported practice. The Commission argues resolutions T-17181 and T-17273 are distinguishable because granting the adjustments would not cause the companies to exceed their authorized revenue requirements, but the Commission did not make such findings in those resolutions. (Resolution T-17181; Resolution T-17273.) Moreover, in the resolution and decision in this case, the Commission did not find that the requested adjustments would cause Siskiyou and Volcano to exceed their authorized revenue requirement for 2016.

According to the Commission, Siskiyou and Volcano's advice letters said the requested adjustments would apply to 2017 funding levels. However, the Commission's assertion is not supported by the record. Siskiyou's September 15, 2016 letter referred to non-recurring adjustment amounts pertaining to regulatory changes of industry-wide effect during 2016. Siskiyou asserted that the changes and effects occurred prior to the 2017 test year, did not relate to the settlement for test year 2017 and should, therefore, be made through an advice letter. The September 15, 2016 letter from Volcano to the Commission contained nearly identical statements. Although the Commission decided Siskiyou and Volcano's advice letters in 2017, the advice letters requested adjustments to each company's 2016 CHCF-A draw.

The Commission further suggests that Siskiyou and Volcano could have submitted additional information relating to the 2016 effects of FCC Order 16-33 and 14-190 during their general rate cases. The Commission argues costs and revenues for prior years are

11

used to forecast the revenue requirement for the test year. But the issue presented is not whether 2016 revenues affected the revenue requirement or rate design for test year 2017; rather, the issue is whether a loss of revenue in 2016 affected the rate design the company and the Commission had projected for 2016 and whether Siskiyou and Volcano should be granted adjustments based on those effects. Using 2016 revenue data to forecast the revenue requirement for 2017 is not the same as providing additional subsidies for 2016 lost revenue.

B

Citing the CHCF-A implementing rules and section 275.6, the telephone companies contend the adjustments are mandatory. The Commission disagrees.

The implementing rules provide that a company shall file annual advice letters, and they also prescribe the content of the letters. (*In the Matter of the Alternative Regulatory Frameworks for Local Exchange Carriers, supra,* 41 Cal.P.U.C.2d at pp. 330-332.) However, the implementing rules do not require the Commission to grant every request for additional support arising from regulatory changes of industry-wide effect. (*Id.* at pp. 330-332.) CHCF-A support is limited to the current funding level amount for the year such support is being requested. (*Id.* at pp. 329, 331.) On remand, the Commission can determine whether Siskiyou and Volcano's requests are within this limitation.

Section 275.6 also does not support the telephone companies' contention. Section 275.6, subdivision (c) prescribes the duties of the Commission in administering the CHCF-A program. The Commission must "[e]mploy rate-of-return regulation to determine a small independent telephone corporation's revenue requirement in a manner that provides revenues and earnings sufficient to allow the telephone corporation to deliver safe, reliable, high-quality voice communication service and fulfill its obligations as a carrier of last resort in its service territory, and to afford the telephone corporation a fair opportunity to earn a reasonable return on its investments, attract capital for

12

investment on reasonable terms, and ensure the financial integrity of the telephone corporation." (§ 275.6, subd. (c)(2).) It must "[p]rovide universal service rate support from [CHCF-A] to small independent telephone corporations in an amount sufficient to supply the portion of the revenue requirement that cannot reasonably be provided by the customers of each small independent telephone corporation after receipt of federal universal service rate support." (§ 275.6, subd. (c)(4).) On the other hand, the Commission must "[e]nsure that rates charged to customers of small independent telephone corporations are just and reasonable and are reasonably comparable to rates charged to customers of urban telephone corporations." (§ 275.6, subd. (c)(3).) Further, it must "[e]nsure that support is not excessive so that the burden on all contributors to the CHCF-A program is limited." (§ 275.6, subd. (c)(7).) Section 275.6 does not mandate granting every adjustment request.

## C

We conclude the Commission failed to proceed in the manner required by law and abused its discretion because its resolution and decision do not conform with the CHCF-A implementing rules. (*Southern Cal. Edison, supra*, 140 Cal.App.4th at p. 1104-1106 [annulling Commission decision where the Commission acted in contravention of its own procedural rules, to the prejudice of the company]; *Southern California Edison Co. v. Public Utilities Com., supra*, 85 Cal.App.4th at pp. 1090, 1105-1106 [finding that the Commission abused its discretion and failed to proceed in the manner required by law where it failed to explain how its alleged practice conformed with its own general order or section 455].) In particular, the Commission disallowed adjustment requests made in annual advice letters for regulatory changes of industry-wide effect by small ILECs that had recently completed general rate cases, but the CHCF-A implementing rules do not preclude such adjustments on that particular basis. The Commission's action prejudiced Siskiyou and Volcano because their requests for $197,976 and 55,495.04 in additional CHCF-A support, made in advice letters consistent with the procedural rules for CHCF-

A, were denied.  We will annul the portions of the resolution and decision denying Siskiyou and Volcano's adjustment requests and remand the matter so the Commission may reconsider the advice letters.  We reject the telephone companies' contention that Commission approval is mandatory whenever a small ILEC submits an advice letter requesting adjustments.  In light of our decision, we do not address the telephone companies' other claims.

## DISPOSITION

The portions of Resolution T-17559 and Decision No. 17-09-016 denying Siskiyou and Volcano's requests for adjustments to their CHCF-A payments for 2016 revenue impacts attributable to FCC Order 16-33 and 14-190 are annulled.  The matter is remanded so the Commission may reconsider Siskiyou and Volcano's requests. Petitioners shall recover their costs.  (Cal. Rules of Court, rule 8.493(a).)


           /S/                  
MAURO, J.


We concur:


      /S/                  
ROBIE, Acting P. J.


      /S/                 ,
HOCH, J.

Filed 9/13/19

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

----

| | |
|---|---|
| CALAVERAS TELEPHONE COMPANY et al., | C085725 |
| Petitioners, | (Resolution T-17559 & Decision No. 17-09-16) |
| v. | |
| PUBLIC UTILITIES COMMISSION, | ORDER GRANTING REQUEST TO PUBLISH |
| Respondent. | |

Cooper, White & Cooper, Mark P. Schreiber, Patrick M. Rosvall, Sarah J. Banola, and Ann L. Ten Eyck for Petitioners.

Arocles Aguilar, Helen W. Yee, and Pamela Nataloni for Respondent.

THE COURT:

The opinion in the above-entitled matter filed on August 20, 2019, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

FOR THE COURT:


    /S/
ROBIE, Acting P. J.


    /S/
MAURO, J.


    /S/
HOCH, J.